UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| HALDRUP USA CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:15-cv-00136-RLM-SLC |
| | ) |
| KINCAID EQUIPMENT | ) |
| MANUFACTURING, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Defendant Kincaid Equipment Manufacturing, Inc. ("Kincaid"), filed a motion to dismiss this breach-of-contract action under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction, or in the alternative, for venue transfer. (DE 10; DE 18). Now before the Court are two motions filed by Plaintiff Haldrup USA Corp. ("Haldrup"), seeking an extension of time so that it may conduct discovery on the jurisdictional issues before responding to Kincaid's motion to dismiss. (DE 13; DE 22). Kincaid opposes the motion (DE 15), and the matter is now fully briefed (DE 20).

For the following reasons, Haldrup's motion for leave to perform jurisdictional discovery will be GRANTED.

*A.  Factual and Procedural Background*

In its complaint, Haldrup, an Indiana corporation with its principal place of business in Indiana, alleges that it is the successor in interest and assignee of certain rights of Haldrup GmbH, formerly known as Inotec Engineering GmbH ("Inotec"), a German manufacturer and seller of agricultural implements used in the area of field research. (DE 16 ¶¶ 1, 5, 14; DE 15 at

3).  In 2012, Inotec sought a partnership with a company based in the United States to introduce, import, and distribute Inotec's products to the United States market.  (DE 16 ¶ 6).  The instant dispute arises out of a Memorandum of Understanding (the "Agreement") entered into in May 2012 between Inotec (prior to assigning its rights to Haldrup) and Kincaid, a Kansas company whose principal operations are located in Kansas.  (DE 16 ¶¶ 2, 3; DE 16-1).

In the Agreement, Kincaid agreed to act as the United States importer and distributor of agricultural implements manufactured and sold by Inotec under the name of "Haldrup A/S." (DE 16 ¶ 8; DE 16-1 at 1).  The Agreement contemplated that after three years, the parties would enter into discussions about Inotec's possible acquisition of Kincaid.  (DE 16 ¶ 7; DE 16 at 3).

Pursuant to the Agreement, Inotec manufactured and sold three combines, one model C85 model and two model CTS-95, to Kincaid.  (DE 16 ¶ 9; DE 16-2 to 16-4).  Haldrup alleges that although Kincaid possesses and has modified the two CTS-95 combines, Kincaid still owes Haldrup more than $350,000 on the purchase price.  (DE 16 ¶¶ 12-13).  Haldrup further alleges that Kincaid has made unauthorized alterations and modifications to the agricultural implements manufactured and sold by Inotec to Kincaid, which Kincaid then marketed and sold under Haldrup's name.  (DE 16 ¶¶ 10, 16-18, 43).  Haldrup alleges that Kincaid's unauthorized alterations and modifications caused problems for the ultimate purchasers of those agricultural implements and harm to Haldrup's reputation.  (DE 16 ¶¶ 10, 16-18, 43).

Consequently, Haldrup filed this suit against Kincaid in Wells Circuit Court on April 30, 2015, asserting that Kincaid breached the Agreement by failing to pay the amount due on the combines and by failing to abide by the terms of the Agreement in marketing, selling, and

distributing Haldrup's products.[1]  (DE 4; DE 16 ¶¶ 26, 32, 35, 37).  Haldrup seeks damages and injunctive relief to preclude Kincaid from marketing or selling, without Haldrup's express approval, any agricultural implements manufactured by Haldrup or Inotec that Kincaid has modified or altered.  (DE 16 ¶¶ 39-46).  Kincaid subsequently removed the suit here based on diversity jurisdiction.  (DE 1).

On June 29, 2015, Kincaid filed a motion to dismiss under Rules 12(b)(2) and 12(b)(3) for lack of personal jurisdiction, or in the alternative, to transfer venue to the District of Kansas. (DE 10).  On July 17, 2015, Haldrup filed an amended complaint (DE 16), and Kincaid filed a second motion to dismiss under Rules 12(b)(2) and 12(b)(3) for lack of personal jurisdiction, or in the alternative, to transfer venue to the District of Kansas (DE 18).  On July 9, 2015, Haldrup filed the instant motion (DE 13), which was renewed on July 29, 2015 (DE 22), and is now fully briefed (DE 15, 20), requesting an extension of time within which to conduct discovery on the jurisdictional issues before responding to Kincaid's motion to dismiss.

### B.  Applicable Legal Standard

It is "well established that a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case." *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 241 (N.D. Ind. 1998).  "At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000); *see also Sullivan v. Sony Music Entm't*, No. 14 cv 731, 2014 WL 5473142, at *5 (N.D. Ill. Oct. 29, 2014)

---

[1] Haldrup also initially sued Emprise Bank, a Kansas-based bank who acted as a lender to Kincaid in its purchase of the combines from Inotec (DE 4; DE 14), but the parties have since stipulated to dismiss Emprise from this litigation (DE 17).

(citing *Reimer Express*, 230 F.3d at 946).  That is, "[a] plaintiff must make a threshold or prima facie showing with some competent evidence demonstrating that personal jurisdiction *might* exist over a defendant in order to be entitled to jurisdictional discovery."  *Andersen*, 179 F.R.D. at 241  (citations omitted).  In appraising a plaintiff's allegations concerning personal jurisdiction, the court must "read the complaint liberally, in its entirety, and with every inference drawn in favor of [the plaintiff]."  *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 878 (7th Cir. 2006).

"It is within [the] Court's discretion to permit jurisdictional discovery."  *Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009).  "Courts generally grant jurisdictional discovery if the factual record is at least ambiguous or unclear on the issue."  *Sullivan*, 2014 WL 5473142, at *5 (citation omitted).  "Thus, jurisdictional discovery is not warranted where jurisdiction is based only upon unsupported assertions of personal jurisdiction or where the defendant has provided affirmative evidence that refutes the plaintiff's assertion of jurisdiction."  *Id*. (citation omitted); *see Ticketreserve, Inc.*, 656 F. Supp. 2d at 782-83 ("The standard is low, but a plaintiff's request will be denied if it is based only upon unsupported assertions of personal jurisdiction."  (citation omitted)).

*C.  Discussion*

Under the foregoing standard, the Court must assess whether, on this record, Haldrup has made a colorable showing that personal jurisdiction might exist over Kincaid in Indiana. Ultimately, the Court concludes that Haldrup has met the low standard to permit jurisdictional discovery.

4

"In order for personal jurisdiction to be proper, a defendant must have established minimum contacts with the forum state." *Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 846 (7th Cir. 2002) (citing *Reimer Express,* 230 F.3d at 934). "A defendant's contacts with a forum state may be related or unrelated to the facts forming the basis for the lawsuit." *Id*. (citation omitted). "Contacts related to the subject matter of the lawsuit may give rise to specific personal jurisdiction, that is, jurisdiction over the person for a case arising from those contacts." *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Anthem Ins. Cos., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1232 (Ind. 2000)). "When the contacts with the forum state are unrelated to the subject matter of the lawsuit, general personal jurisdiction may be established if the defendant's contacts are so continuous and systematic that the defendant could reasonably foresee being haled into court in that state for any matter." *Id*. (citing *Helicopteros*, 466 U.S. at 414-15; *Anthem Ins.*, 730 N.E.2d at 1234).

Haldrup does not suggest that Kincaid is subject to general personal jurisdiction in Indiana; rather, Haldrup argues that it has presented a colorable case of specific personal jurisdiction over Kincaid in Indiana. (DE 13 ¶ 21). Based on the face of the complaint, Haldrup's claims arise out of a contract between a Kansas corporation (Kincaid) and a German company (Inotec), who then assigned its rights to Haldrup; there is no evidence that any of Kincaid's and Inotec's contacts during the negotiation or formation of the Agreement occurred within the state of Indiana. (DE 16). Haldrup further asserts, however, that Kincaid's sale of Haldrup's goods in Indiana creates a substantial connection to this forum. (DE 16 ¶ 3).

In that regard, the Agreement reflects that Inotec and Kincaid entered into the Agreement to "further develop [Kincaid's] product portfolio, to introduce [Inotec's] products *to the North American market* and to further develop the sales numbers for these products, which are sold under the name of [Haldrup]."  (DE 16-1 at 1 (emphasis added)).  In that vein, Haldrup alleges in its complaint that Kincaid's actions in violation of the Agreement have harmed Haldrup "in connection with the sale of its products to consumers of agricultural implements in the United states."  (DE 16 ¶ 39).

In connection with the instant motion, Haldrup produces evidence that Kincaid sold a research planter under Haldrup's name to Purdue University, which is located in Indiana, and reasonably demonstrates that problems with that sale relate to Kincaid's performance and purported breach of the Agreement.  (DE 13 ¶¶ 13-14; DE 13-1).  More particularly, Haldrup submits a letter from Kincaid's counsel to Inotec in April 2015 referencing purported problems with the Haldrup planter that Kincaid sold to Purdue, and stating that such problems are one of the reasons that Kincaid refuses to pay Haldrup for the two combines at issue in this suit.  (DE 13 ¶¶ 13-14; DE 13-1 at 1-3; DE 11-1 ¶ 18).  Kincaid's counsel attached a memorandum to Kincaid written by Purdue, summarizing the unsatisfactory performance of the Haldrup planter. (DE 13-1 at 5-7).

In that memorandum, Purdue describes numerous problems that it has experienced with the Haldrup planter purchased from Kincaid, including that a rider sustained injury when the planter's seat broke.  (DE 13-1 at 5-7).  Purdue then concludes that the planter "is unacceptable and needs to be renovated and ultimately replaced."  (DE 13-1 at 5).  Purdue also mentions that Kincaid technicians visited Purdue to troubleshoot the problems and make adjustments to the

equipment.  (DE 13-1 at 1).  In that regard, Kincaid's counsel attached to the letter an itemized list of expenses, summarizing the expenses for two Kincaid technicians that spent two weeks at Purdue in response to its complaints about the Haldrup planter.  (DE 13-1 at 9).

"[S]pecific jurisdiction requires that the suit 'arise out of' or 'be related to' [a defendant's] minimum contacts with the forum state."  *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d. 1272, 1277 (7th Cir. 1997); *see also GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).  "[T]o be relevant for personal jurisdiction, past contacts should either bear on the substantive legal dispute between the parties or relate to the operative facts of the case."  *GCIU-Emp'r Ret. Fund*, 565 F.3d at 1024 (citing *RAR, Inc*., 107 F.3d at 1278).  Thus, "the action must *directly arise* out of the specific contacts between the defendant and the forum state."  *Id.* (quoting *RAR, Inc.*, 107 F.3d at 1278).  "[I]t must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity."  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003) (citations omitted) (stating that defendant must have "purposefully availed itself of the privilege of conducting activities within the forum state").  "In other words, the focus of the court's inquiry must be on the 'relationship among the defendant, the forum, and the litigation.'"  *Hollinger Int'l, Inc. v. Hollinger, Inc.*, No. 04 C 0698, 2005 WL 589000, at *17 (N.D. Ill. Mar. 11, 2005) (quoting *Heritage House Rests., Inc. v. Cont'l Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990)).

Here, the evidence that Haldrup produced concerning the Purdue planter "relates to" the instant breach of contract dispute, *RAR, Inc.*, 107 F.3d. at 1277, to make at least a threshold showing that personal jurisdiction might exist over Kincaid in Indiana.  *See Andersen*, 179

F.R.D. at 241; *see WAV, Inc. v. Walpole Island Nation*, 47 F. Supp. 3rd 720, 726 (N.D. Ill. June 6, 2014) (considering when assessing whether personal jurisdiction existed that defendant performed the contract in the forum state); *Solo Cup Co. v. First Sw. Vending & Food Serv.*, No. 07 C 4384, 2008 WL 2787442, at *7 (N.D. Ill. July 17, 2008) (considering in its analysis of personal jurisdiction where the negotiation, execution, *performance and alleged breach* of the Agreement occurred).  "[D]iscovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction." *Andersen*, 179 F.R.D. at 241 (citation omitted).  "In fact, a district court risks abusing its discretion by not allowing some limited discovery into the personal jurisdiction issue." *Id*. (citation omitted).

As such, Haldrup's motion will be granted in that it will be permitted to conduct discovery with respect to the issue of specific personal jurisdiction to determine the exact nature of the Purdue transaction, as well as any other marketing or sale of Haldrup or Inotec agricultural implements by Kincaid in, or directed to, Indiana.  (DE 13 ¶ 24); *see Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996) (finding the "overall relationship" between defendant, the forum state, and the litigation to be relevant to the issue of personal jurisdiction and whether defendant intended to serve that market, rather than only those contacts directly arising out of the parties' deal).

### D.  Conclusion

For the foregoing reasons, the Motion for Extension of Time to Respond to Motion to Dismiss Amended Complaint for Lack of Jurisdiction in Order to Conduct Discovery (DE 22) filed by Haldrup is GRANTED, and the Motion for Extension of Time to Respond to Motions to Dismiss for Lack of Jurisdiction in Order to Conduct Discovery (DE 13) is deemed MOOT.

Haldrup will be permitted to conduct discovery with respect to the issue of specific personal jurisdiction to determine the exact nature of the Purdue transaction, as well as any other marketing or sale of Haldrup or Inotec agricultural implements by Kincaid in, or directed to, Indiana.  The Court sets this case for a telephonic scheduling conference at 1:00 p.m. on August 21, 2015, to set a jurisdictional discovery deadline.

    SO ORDERED.

    Entered this 7th day of August 2015.

S/ Susan Collins  
Susan Collins,  
United States Magistrate Judge